DENNIS COUGHLIN, Plaintiff in Error, *v.* THE PEOPLE, Defendants in Error.

### ERROR TO RECORDER'S COURT OF CHICAGO.

It is not proper where a witness has been examined, and leaves the court, so that he cannot again be found, as appears by a return to an attachment against him; to instruct the jury that it is probable the witness avoids further examination, thereby prejudicing his credibility.

Such instructions only should be given, as are based upon legitimate evidence in the case, and if irrelevant instructions properly stating abstract principles of laws are given, which are calculated to mislead the jury, it will be error.

If witnesses with proper opportunity of knowing, being faithworthy, state positively that an individual did not strike a blow, it is not negative proof; and is as much entitled to weight as the affirmative testimony of others, who state that they saw him strike the blow.

THE plaintiff in error was tried and convicted of an assault with a deadly weapon before the Recorder's Court of the city of Chicago, R. S. WILSON, presiding. He sued out this writ of error upon the statement of the case, as disclosed by the opinion of the court.

B. S. MORRIS and T. HOYNE, for Plaintiff in Error.

W. BUSHNELL, State's Attorney, for The People.

SKINNER, J. This was an indictment against Coughlin for an assault with a deadly weapon on one Higgins. The evi-

dence showed that the defendant, who was a police officer of Chicago, with others (for the alleged purpose of suppressing a riot), arrested one Harrison and had him in custody, when Higgins interfered on behalf of the prisoner; that while the officers were endeavoring to force Harrison through the crowd on their way to the prison, Higgins was knocked down with a club. Several witnesses, on the part of the People, testified that the defendant struck the blow, and several, on the part of the defendant, testified that they saw what passed, so far as the defendant was concerned, and that he did not strike the blow; and two testified that they saw another person strike it, and that the defendant did not.

One Powell, one of the witnesses for the defendant, having been sworn and his examination concluded, was, during the further progress of the trial, called, and failing to appear an attachment issued against him and was returned, "not found." The court, on the part of the People, instructed the jury as follows: "If the jury believe, from the evidence, that Higgins, Meacham, Harrison, Hyde, Gaylord and Demary, are truthful witnesses, and that they swear positively to the fact that the defendant struck Higgins, such positive evidence should receive more consideration than any negative evidence there may be in the case."

"If the jury believe, from the evidence, that Powell, since he left the stand, has secreted himself, or kept out of the way of the officers to prevent being recalled as a witness in this case, such fact, if proved, should be considered in determining as to the credibility of Powell's statements."

Although it is the duty of witnesses not to depart the court before the evidence is closed, unless discharged by the court, yet all conversant with judicial proceedings, know they often do, without any improper motive, supposing their presence no longer required. The process of attachment and return of "not found," issued and returned upon the trial, where the witness, as in this case, resides in a populous city, cannot be sufficient to justify the presumption of evasion of service and of design to avoid further examination. The only effect the instruction as to Powell's testimony could have had, was to point the jury to the facts of his non-appearance when called, and the issuing and return of the attachment, as raising the presumption that he avoided further examination, and thereby prejudicing his credibility. It would be unfair to the witness, whose character is thus involved, to attach to these facts such legal consequence.

Such instructions only should be given as are based upon legitimate evidence in the case; and, if an irrelevant instruction be given, although it be unobjectionable as an abstract

proposition of law, which is calculated to mislead the jury and affect their conclusion upon the issue submitted to them, it will be error. *Humphreys* v. *Collier*, 1 Scam. R. 47; *Stout* v. *Williams*, 2 ibid. 67; *Hill* v. *Ward*, 2 Gil. R. 285; *Denman* v. *Bloomer*, 11 Ill. R. 177; *McKinley* v. *Watkins*, 13 Ill. R. 140; *Baxter* v. *The People*, 3 Gil. R. 368. The instruction in relation to positive and negative evidence, evidently assumes that the evidence of those who testified that the defendant did *not* strike the blow, is, in the legal sense, negative evidence, and the jury probably so acted upon the instruction.

Those witnesses, if they had the same opportunity of knowing what the defendant did do on the occasion, and were equally faithworthy and likely to know and remember the facts with those who testified that the defendant did strike the blow, were entitled to equal credit, and their statements should have had equal weight and consideration. Their testimony was as positive as to the fact in controversy, as the testimony of the People's witnesses, and if they had equal honesty, ability, and opportunity of knowing what did transpire, and memory, their testimony would have had the same weight on a mind seeking to ascertain truth. An *alibi*, established as a fact in the mind of the juror, would exclude the conclusion of guilt; because the accused could not, according to all human understanding, have the quality of ubiquity; he could not, at the same time, have been both where the criminal act was committed and at another place. Yet the evidence, in such case, rendering it impossible that the accused could have committed the crime charged, is as much negative evidence as the testimony of those witnesses who saw what passed, and testifying positively and minutely, swore that the defendant did *not* strike the blow. If the witnesses, on the part of the defendant, had simply testified that they did not see the defendant strike Higgins, or that they did not see the blow struck, this would, in the legal sense, have been negative evidence; for their testimony, although the alleged fact existed, might well be accounted for without imputing to them the crime of perjury.

It might be that they, although present, did not see the blow struck, but it could not be that any one saw what did not occur, or that an act was done by one not having the ability, under the established state of facts, to do it. 1 Starkie's Ev. 579; *Gorham* v. *Peyton*, 2 Scam. R. 363.

Judgment reversed and cause remanded.

*Judgment reversed.*