## LOGAN BELT

### *v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Mt. Vernon February 3, 1881.*

1.  PRACTICE—*allowing further examination of juror after closing, is discretionary.*  The giving the prosecution in a criminal case the privilege to re-examine a juror, after his acceptance by the State's attorney, but before his acceptance by the defendant, and the allowance of a challenge for cause shown on the re-examination, is a matter wholly within the discretion of the court, the same as permitting a further question to be asked of a witness after his examination has been closed.

2. ERROR WILL NOT ALWAYS REVERSE—*rejecting testimony—objection obviated by other testimony—as, on cross-examination to lay foundation to impeach witness.* On the trial of one for murder, the defendant's counsel asked one of the people's witnesses if he did not swear, on the examination before the justice of the peace, that he and another carried grub to those who were concealed to waylay and kill the defendant. The court, on objection, excluded the question, but permitted the witness to be asked if he ever did carry grub to those who were concealed to waylay and kill the defendant, and the witness answered that he never did. This person was not a witness of the transaction, but of statements made by the defendant that he went to the place of the difficulty purposely to kill the deceased. There was other evidence of impeachment of this witness, but there was ample evidence, excluding his testimony, to sustain a verdict finding the defendant guilty : *Held,* that the error, if any, was not sufficient to justify a reversal.

3. SAME—*objection obviated by the character of the finding.* An instruction to a jury, in a capital case, that if they believe, from the evidence, that the defendant sought a difficulty, or provoked a difficulty with the deceased, for the purpose of killing him, and in the fight, did kill him, in pursuance of his *malicious* intention of taking the life of the deceased, they should find him guilty of murder, is not rendered erroneous by the use of the word "malicious," where the jury finds the defendant not guilty of murder, but only of manslaughter.

4. INSTRUCTION—*when it need not refer to the evidence.* Where an instruction states only a legal proposition, it need not make reference to the evidence, and need not be so restricted.

5. SAME—*construed as not having reference to the evidence.* On a trial of one indicted for murder, the court instructed the jury, that, under the indictment, they could find the defendant guilty of murder or manslaughter, and then stating the several punishments applicable to each, is not open to the objection that it conveys an intimation to the jury that, upon the evidence, they could find the defendant guilty of either of those crimes. It is simply informing the jury, that, on an indictment for murder, they may find the defendant guilty of murder or manslaughter, without having in view at all the evidence in the case.

6. SAME—*construed as not referring to the degree of evidence required.* An instruction to the jury, in such case, "if you *find*" so and so, "you will find the defendant guilty of manslaughter, without making such finding dependent upon the jury finding such and such facts established beyond a reasonable doubt, from the evidence, is not erroneous. Such an instruction has no reference to the quantity of evidence required, but is directed solely to the result of the finding certain facts, assuming that the finding will be in due form and upon proper warrant. It is but saying, that on such facts as stated, the result would be as named.

7. SAME—*objection obviated by other instructions — as to the credibility of
defendant's witnesses only.* The court, on a trial for murder, instructed the
jury, that, in passing upon the evidence of the witnesses for the defendant,
they might take into consideration their interest, if any, in the result of the
trial, their feelings towards the defendant, if any, their manner of testifying
and their appearance on the stand, and give it such weight as they might
think it entitled to under all the circumstances: *Held,* that it would have
been better in form, had it been general as to all the witnesses in the case,
but there being two other instructions of similar import, though not
embracing all the particulars of the first, which was general, there was no
error.

8. SAME — *taking two instructions together.* On a criminal trial, in
which it was claimed that a witness for the people was impeached, the court
instructed the jury that everything said by the witnesses on both sides, if not
excluded by the court, was before them, and should be considered in making
up their verdict, but, in a subsequent instruction, the jury were told, that,
although the witness had been attacked for truth and veracity, before they
could wholly disregard his evidence, they should inquire whether he had sus-
tained himself by witnesses testifying their willingness to believe him under
oath, and whether or not he had been corroborated in his testimony by other
evidence, or by the circumstances of the case, and then as to such points
wherein he was corroborated, if he was so corroborated, they should not dis-
regard his evidence, but give such weight to it as they might think it
deserved, for the jury were the judges of the credibility of all the witnesses:
*Held,* that taking the two instructions together, the defendant had no just
cause of complaint.

9. SAME—*as to self-defence.* On a trial for murder, the court instructed the
jury, on the part of the prosecution, that before the defendant could success-
fully claim that he committed the homicide in self-defence, the jury "must
believe, from the evidence, that the danger was so great and pressing, that,
in order to save his own life, or to save himself from great bodily harm, the
killing seemed to the defendant to be *absolutely* necessary. It was objected
the word "absolutely" rendered the instruction bad, but the court held, that
in their application to this case, there was no essential difference between the
expression "absolutely necessary" and the word necessary.

10. SAME—*as to character of modification.* The modifying of a defendant's
instruction in a criminal case, "so as to make it read very much as though
it was one of the people's instructions," is no sufficient ground of complaint
by the defendant.

WRIT OF ERROR to the Circuit Court of Gallatin county;
the Hon. C. S. CONGER, Judge, presiding.

Messrs. LINEGAR & LANSDEN, for the plaintiff in error:

During the impaneling of the jury, the State's attorney examined one Harris, and, upon closing, tendered him to the defendant's attorneys, who thereupon began their examination, but, before they had completed the same, the State's attorney asked and obtained leave to further examine the juror. After making another examination, the State's attorney challenged him for cause, on the ground he had conscientious scruples against capital punishment.

We find nothing in our reports concerning the matter, and only the general statement and ruling in other States, that a juror must be challenged before he is sworn, or before he has taken the book to be sworn. We submit the exception to the decision of the court.

The court erred in not allowing the question put to George W. Covert, on cross-examination, whether the answer could have been contradicted or not, as showing the state of his feelings. Citing *Ray* v. *Bell*, 24. Ill. 450; 1 Whart. Ev. secs. 544 and 561; *People* v. *Christie*, 2 Parker's Cr. R. 579.

By the eighth instruction, the court said to the jury, "under the indictment in this case, you can find the defendant guilty of murder or manslaughter." There is nothing to show the jury that the court, in the use of the language, did not have in view the evidence in the case, which was all in.

The ninth instruction uses the words, "in pursuance of his malicious intention of taking the life of Oldham," in a way that might be understood as a statement on the part of the court, that the defendant had a malicious intention of taking Oldham's life. *Roach* v. *People*, 77 Ill. 25.

The tenth instruction does not once refer to the evidence. It simply says, if the defendant did this or that, or the other thing, then he can not avail of the doctrine of self-defence, nor is it simply an abstract statement of the law.

The eleventh instruction told the jury what they might consider, "in passing upon the evidence for the witnesses of

the defendant." It should not have been limited to defendant's witnesses. *Chesney* v. *Meadows*, 90 Ill. 433.

Under the twelfth instruction, the jury were denied the right to disregard the testimony of any witness who may have been impeached, and the impeachment of Covert was practically of no avail.

The use of the words " absolutely necessary," in the 19th instruction for the people, makes it erroneous. That is necessary in self-defence, which is deemed requisite. That which is absolutely necessary is an indispensable requisite.

The 18th and 23d instructions for the people are not based on or restricted to the evidence, and the latter seems to assume a number of things as either proved or admitted. *Ewing* v. *Runkle*, 20 Ill. 448; *Holliday* v. *Rogers*, 34 id. 194; *Parker* v. *Fisher*, 39 id. 164; *Miller* v. *Balthasser*, 78 id. 302; *Beldon* v. *Woodmansee*, 81 id. 28; *Geizler* v. *Wetzel*, 85 id. 325; *Freeport* v. *Isbell*, 82 id. 443; *Martin* v. *Johnson*, 89 id. 538.

Where the evidence is conflicting or doubtful, the jury should be accurately instructed. *Ruff* v. *Jarrett*, 94 Ill. 476; *Wabash Ry. Co.* v. *Henks*, 91 id. 408; *Ill. Cent. R. R. Co.* v. *Maffit*, 67 id. 431; *C. B. & Q. R. R. Co.* v. *Murry*, 80 id. 88; *Steinmeyer* v. *People*, 95 id. 383.

Mr. JAMES K. EDSALL, Attorney General, for the People.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

On the 19th day of July, 1879, at the May term of the Gallatin circuit court, Logan Belt, upon an indictment for the murder of Elisha T. Oldham, was found guilty of manslaughter, and his term of imprisonment in the penitentiary fixed at fifteen years, and was sentenced accordingly.

The defendant brings the record here and assigns a number of reasons why the judgment of the circuit court should be reversed.

During the impanneling of the jury, one Harris was called and examined as a juror, and accepted by the State's attorney

and tendered to the defendant; and after being so tendered, and before he was accepted by the defendant, or sworn as a juror, the State's attorney asked and obtained leave to further examine said Harris, and after further examination, the State's attorney challenged him for cause, on the ground that he had conscientious scruples against capital punishment, and the challenge was allowed. Exception was taken to the permitting the further examination of Harris, and the ruling of the court in giving such permission is assigned for error. The giving of such permission was a matter wholly within the discretion of the court, the same as permitting a further question to be asked of a witness after his examination had been closed, and there was no error in that respect.

The case made by the evidence was, that on the evening of December 27, 1875, there was a dance at the house of Thomas Oldham, some forty to fifty persons being present. The house consisted of two rooms, some 18 by 20 feet, with a hallway between them, the dance taking place in the south room, in which was a door, in the north side, leading into the hallway. At this dance Elisha T. Oldham, the deceased, who was a brother of Thomas Oldham, was present, and he and one Burkhardt were keeping the door, collecting twenty-five cents for admission from each person. A little after dark that evening Logan Belt, the defendant, and one Lyons, came to the dance. They entered the room where the company were, and Belt took off his overcoat and hung it up behind the door, and remained standing near the door where he entered. The deceased asked Lyons for the twenty-five cents, and he said Belt was to pay for him. The deceased then went to Belt, and asked him if he was to pay for Lyons. Belt said he was not, and asked if all that were in the house had paid. The deceased said they had, and if Lyons did not pay he would have to put him out. Belt said he had not paid, and asked who would put him out. The deceased said he would, or he would try. An encounter then ensued. A blow was struck. Belt forced the deceased back across the room to the

hearth of the fire-place, in the south side, where the deceased fell, Belt on top. The deceased kicked Belt off him, or Belt was pulled off. Belt backed toward the door in the north side of the room. The deceased arose, and, as some witnesses say, moved two or three steps toward Belt, and the latter said to him, "You hit me with a pair of knucks," and the deceased replied, "By ——, I am a bad one with them," and Belt drew a pistol and shot the deceased, they being at the time from four to six feet apart. The deceased died of the wound on the evening of the 29th of December, the second day after he was shot. Belt appears to have had a clean cut in the forehead, which, in the physician's opinion, extended to the bone, and seemed to have been cut with a metallic substance.

There is a conflict of evidence as to which struck the first blow, the preponderance being that it was struck by Belt, and several witnesses testifying that he struck with "knucks."

We regard the verdict as abundantly sustained by the evidence. With the tender regard for human life which the law requires, there should have been no taking of life on the occasion.

The exclusion of a certain question propounded by the defendant, on cross-examination, to the witness Covert, who testified on behalf of the people, is assigned for error.

The witness was asked: Did you not swear at Esquire Walton's, on the trial before him, that you and Jesse Oldham carried grub to those who were concealed to waylay the defendant, Belt, and kill him? The court sustained the objection to the question, but permitted the witness to be asked, Did you ever carry grub to those who were concealed to waylay the defendant, Belt, and kill him? And the witness answered that he never did.

This person was not a witness of the transaction itself, but of statements made by Belt that the latter went to the dance purposely to kill the deceased. The narration of the transaction even as given by the defendant's witnesses, was amply sufficient to warrant the verdict. Any testimony extrinsic

of that was entirely superfluous. There were such a large number of witnesses testifying to the occurrence, as seen by them, that impeaching evidence in regard to any one could have been of but little avail.

The answer to the question excluded could only have elicited evidence in impeachment of the witness, by showing his bias or contradictory statement. There was other direct evidence in impeachment of this witness, which defendant's counsel insists was abundant to that end. Without the testimony of this witness the verdict was clearly right. This court has repeatedly decided that where the verdict is clearly right upon the evidence, an error of so little significance that it could not reasonably have affected the result, should not reverse a judgment.

We find no material error in the exclusion of this question.

Objection is taken to instructions that were given for the people. The eighth was:

"8. The court instructs the jury, that under the indictment in this case you can find the defendant guilty of murder or manslaughter; that the punishments for murder are three: 1st, death, or, 2d, imprisonment in the State penitentiary for the term of the defendant's natural life, or for any term not less than fourteen (14) years that you may agree upon; that the punishment for manslaughter is imprisonment in the penitentiary for his natural life, or for any number of years."

This is objected to, as conveying the intimation to the jury that upon the evidence in this case they could find the defendant guilty of murder or manslaughter. We do not think the instruction is liable to be so understood. The plain meaning of it is no more than that, under an indictment for murder, the prisoner could be convicted of either murder or manslaughter, it informing the jury what was allowable to be done under such an indictment, without having in view at all the evidence in the case.

The ninth was:

" 9. The jury are instructed, that if you believe, from the evidence, that the defendant sought a difficulty or provoked a difficulty with the deceased, Elisha T. Oldham, for the purpose of killing him, and in the fight did kill him, in pursuance of his malicious intention of taking the life of Oldham, you will find him guilty of murder ; but if you find that the defendant voluntarily got into the difficulty with Oldham, but did not intend to kill at the time, and did not decline further fighting before the mortal shot was fired by him, and then drew his pistol and shot and killed Oldham, you will find the defendant guilty of manslaughter, although the shooting was done in order to prevent an assault upon him by Oldham, or to prevent Oldham from getting the advantage in the fight."

The objection to the first branch of this instruction is, that the words "in pursuance of his malicious intention of taking the life of Oldham," might have been understood by the jury as a statement on the part of the court that the defendant had a malicious intention of taking Oldham's life. It is a sufficient answer that the jury found in favor of the defendant in this respect,—that he had not such malicious intention.

It is objected further, that the second clause of the instruction, following the words "guilty of murder," is not restricted to the evidence; that it simply says, "if you *find* that defendant" did so and so, "you will find the defendant guilty of manslaughter;" that the direction of the court to convict, at the end of the instruction, should have been made expressly dependent upon the jury finding such and such facts, established beyond a reasonable doubt by the evidence. The instruction, in this respect, had no reference to the quantity of evidence required or to what would warrant the finding, but was directed solely to the result of a finding of certain facts, assuming that the finding would be in due form and upon proper warrant. It was but saying, that upon such

facts as stated, the result would be as named; that under certain facts stated,—or, in other words, if the jury found the facts stated,—that then the defendant was guilty of manslaughter.

There might as well be exception taken to the sufficiency of the verdict in the case, in that it simply finds the defendant guilty, without adding that the jury so find upon evidence establishing the fact beyond a reasonable doubt.

The eleventh instruction was :

" 11. The jury are instructed, that in passing upon the evidence of the witnesses for the defendant, you may take into consideration their interest, if any, in the result of the trial, their feelings towards the defendant, if any, their manner of testifying, their appearance upon the witness stand, etc., and give to their evidence such weight as you think it entitled to under all the circumstances of the case."

The objection to this instruction is, that it should not have been limited to the defendant's witnesses; that it impliedly told the jury that, in passing upon the evidence of the witnesses for the people, they were not to be governed by the tests laid down for the determination of the credibility of defendant's witnesses. The instruction would have been better in form, had it been general as to the witnesses in the case, without restriction. But, whatever of objection, in the respect named, there may be claimed to be to the instruction, we think it was obviated by other instructions in the case, which were general as to all the witnesses—the twentieth instruction for the people being, that " in passing upon the evidence of the witnesses, it is proper and competent for the jury to take into consideration the feeling, relation and interest of the witnesses, if any is shown by the evidence, together with the manner in which they deliver their state-. ments, and their means of knowing the facts about which they have testified."

And, upon the request of the defendant, the jury were instructed, that "in determining upon the strength and value of evidence, it is proper for you to consider the age and intelligence, and means of knowledge, of each witness; also his or her appearance on the stand, and manner of testifying; and you may also properly consider whether the witness is influenced by interest, or passion, or ill-will in giving his testimony."

Although these last instructions did not extend to quite all the particulars named as tests of credibility in the eleventh instruction for the people, they were sufficient in their reach, for all the practical purposes of the case, to exclude any idea, if any there could be, of the exclusive application of that instruction to the defendant's witnesses.

The twelfth instruction was:

"12. The jury are instructed, that everything said by the witnesses on both sides, if not excluded by the court, is before you, and should be considered by you in making up your verdict; and if, upon a fair and candid review of all the evidence in the case, you are satisfied of the defendant's guilt, beyond a reasonable doubt, either of murder or manslaughter, you should so find in your verdict."

It is said, under this instruction the jury was denied the right to disregard the testimony of any witness who might have been impeached, and it is claimed that the witness Covert, who testified on behalf of the people, was effectually impeached.

Quite a number of witnesses testified that Covert's reputation for truth was bad, and that they would not believe him under oath. Three witnesses testified they would believe him under oath.

The same may be said of this last instruction as of the preceding one, that the alleged objectionable feature of it is removed by another instruction for the people, which was as follows:

" The jury are instructed, that although the witness George W. Covert has been attacked, and witnesses have been called who swear they would not believe him on oath, before you can wholly disregard his evidence, you will inquire whether he has sustained himself by calling witnesses to testify to their willingness to believe him on oath, and you will also inquire whether or not he has been corroborated in his testimony by other evidence, or by the circumstances in the case.; then, as to such points of his evidence wherein he is corroborated (if he has been corroborated), you should not disregard his evidence, but give such weight to it as you think it deserves, for the jury are the judges of the credibility of all the witnesses introduced."

In view of this last instruction, it can not be said the jury were denied the liberty to disregard the testimony of this witness on any point where he lacked corroboration ; and, taking these two instructions together, we do not consider that there is any just ground of complaint in respect to the rule that was laid down with regard to viewing the evidence of the witnesses in the case, including that of the witness Covert.

The eighteenth instruction is not obnoxious to the objection made, that it is not restricted to the evidence. It is but the statement of a legal proposition.

The nineteenth instruction, which was upon the subject of self-defence, was, that before the defendant could successfully claim that he committed the homicide in self-defence, the jury "must believe, from the evidence, that the danger was so great and pressing that, in order to save his own life, or to save himself from great bodily harm, the killing of Oldham seemed to the defendant to be absolutely necessary."

The objection taken to this instruction is in the use of the words "absolutely necessary," instead of the simple word "necessary."

In their application to the present case, we perceive no essential difference between the respective expressions.

It is complained of the twenty-third instruction, that it assumes a number of things as either proven or admitted, and that it does not contain the words "from the evidence." We do not regard the instruction as assuming anything, but as only containing hypothetical statements; and we do not consider that there was any occasion for employing the words named, as there was but a proposition of law stated.

The tenth instruction, which was omitted in its proper order, was:

"10. The jury are instructed, that the defendant can not avail himself of the doctrine of necessary self-defence, if the necessity of that defence was brought on by himself, or provoked by his own deliberate and lawless acts, or by beginning the fight with the deceased for the purpose of taking his life or committing a bodily harm upon him, in which he killed Oldham, by the use of a deadly weapon, unless the defendant had really, and in good faith, endeavored to decline any further struggle before the shot was fired."

This instruction is, in character, similar to the two preceding ones, and a like objection is made that the instruction does not refer to the evidence, and that it assumes certain facts to exist, without any reference as to whether the evidence established them to the satisfaction of the jury, or not.

And the same answer may be made, that the instruction only lays down a legal proposition, and there is no assumption of facts, but only a hypothetical statement of facts.

The court modified two of the defendant's instructions and gave them to the jury, to which objection is made. As to one of these, the portion of it to which exception is taken was in nowise modified by the court, but is in the very words as drawn and asked by the defendant's counsel. All the objection taken to the other is, that it was so modified "as to

make it read very much as though it was one of the people's instructions,"—obviously no sufficient ground of objection.

The criticisms made upon the instructions are not of sufficient force to require a reversal of the judgment. The defence set up was, that the homicide was committed in self-defence. A large number of instructions, some fifteen, were given as asked by defendant's counsel. The jury were most fully, and quite as favorably for the defendant as the law would permit, instructed by the court upon the subject of self-defence. The defendant had no just cause of complaint in regard to the giving of the law of the case to the jury.

We find no material error in the record, and the judgment must be affirmed.

*Judgment affirmed.*