(No. 21085.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* NORMAN RESNICK *et al.* Plaintiffs in Error.

*Opinion filed April 23, 1932—Rehearing denied June 14, 1932.*

ELLER, HERR & CALLAHAN, (SIMON HERR, and WALTER B. PRENDERGAST, of counsel,) for plaintiffs in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, and GRENVILLE BEARDSLEY, of counsel,) for the People.

Mr. JUSTICE ORR delivered the opinion of the court:

Norman Resnick, Seymour Pellar, Sam Gold, Irving Sandler and Charles Hadesman were convicted in the criminal court of Cook county of kidnapping Theodore L. Kopelman for ransom. Sandler and Hadesman were granted separate trials. Resnick, Pellar and Gold were found guilty by a jury of "kidnapping for ransom in manner and form as charged in the indictment," and the punishment of each

was fixed at imprisonment in the penitentiary for twenty years. Gold sued out a writ of error from this court and the judgment was affirmed as to him. (*People* v. *Gold,* 343 Ill. 402.) The present case is a writ of error for review of the record as to Resnick and Pellar, herein called defendants.

The errors relied on for reversal are that the trial court erred in improperly giving or refusing to give certain instructions to the jury.

On February 28, 1930, at about 10:30 P. M., Theodore Kopelman was driving his Lincoln car west on St. James place, a narrow street, in Chicago. He stopped to let a person out of his car, and on starting again he noticed a blue Buick coupe ahead of him which pulled over diagonally so as to block the street. When he stopped to avoid a collision, a man, afterwards identified as Pellar, got out of the Buick, came to Kopelman's car and with a drawn gun told him not to move. Kopelman told him to take the car and his money, as he did not want to argue with a man with a gun. Pellar told him that this was not an ordinary stick-up—that he was going to take Kopelman with him. Pellar then entered Kopelman's car, motioned to someone in the Buick to drive on and ordered Kopelman to follow. Kopelman told Pellar that he thought they had the wrong man—that he was no hoodlum or racketeer but was only in the life insurance business. Pellar replied that if Kopelman went along everything would be all right but if he did not Pellar would "throw slugs into him." They soon came upon a tan Cadillac sedan containing three people and Kopelman was told to follow this car. They then drove into Wisconsin, where Kopelman was taken to a cottage and blindfolded. Pellar there told him he was through with him and turned him over to some other men. They took all of his papers and money away from him and asked for $5000 ransom money. He told them he did not have it—that he did not have more than $600 in a bank and some bonds, which they said they

did not want. At their direction he wrote a note to Louis J. Victor, a lawyer friend of his, telling Victor to get $3000 and turn it over to the bearer; that he would re-pay him later, and that Victor should not raise any fuss about it as it would go very hard with Kopelman if he did. This note to Victor was introduced in evidence at the trial. During his stay at the cottage in Wisconsin either Sandler or Gold was with him continually. He also saw Resnick around the cottage a number of times.

John Bjorkman, an employee of the Sheridan Trust and Savings Bank, testified that on March 8, 1930, Pellar and Resnick presented a check for $1000 bearing Kopelman's signature. The witness identified Pellar and Resnick in the court room. He said he would not cash the check because another bank's name had been scratched out and that of the Sheridan Trust substituted, and Kopelman's name did not appear as an endorsement. This check, signed by T. L. Kopelman, made payable to cash, was introduced in evidence.

Kopelman, through the efforts of his sister and his lawyer friend, Victor, raised and paid the kidnappers in all about $4000 of his own funds. The negotiations for the payment of this ransom were chiefly made by Pellar and Resnick, and after the money was paid, Resnick drove Gold, Sandler and Kopelman back to Chicago, where the latter was given one dollar and turned loose. The kidnappers were soon thereafter seized by the police on information given by Kopelman's sister.

Particular objection is made by defendants to the following instruction given at the request of the People:

"The court further instructs the jury that if the jury shall find beyond a reasonable doubt that either of the defendants are guilty of the crime of kidnapping in manner and form as charged in the indictment it will then become the further duty of the jury in this case to fix the punishment to be imposed which, as stated in these instructions,

may be death or be punished by imprisonment in the penitentiary for life or any term of years not less than five (5) years."

In support of their contention the defendants argue that this instruction was erroneously given because it confined the jury solely to a consideration of the aggravated crime of kidnapping for ransom, (Smith's Stat. 1931, chap. 38, par. 386, p. 1046,) where the kidnapping must be done for the purpose of obtaining a ransom from the person kidnapped, his parent, guardian or legal custodian. The theory of the defense is, that if the defendants are guilty they are only guilty of the ordinary kidnapping mentioned in section 166 of the Criminal Code. (Smith's Stat. 1931, par. 384, p. 1046.) It is suggested, for example, that if the pastor of a church were kidnapped for the purpose of inducing his congregation to furnish ransom the offense would not be a capital felony under the provisions of the above statute but would only be punishable as common law kidnapping, by fine and imprisonment for a lesser term, since the purpose in such a case was not to secure ransom from the parent, guardian or legal custodian of the person kidnapped. This argument is ingenious but has no application to the facts in this case. Here the record clearly shows that the defendants were not charged with any other offense except kidnapping for ransom. The indictment under which they were tried charged them with the crime of kidnapping Kopelman for the purpose of extorting from him a large sum of money, and with no other crime. Pellar and Resnick were both represented by able counsel. Their defense was that Kopelman himself planned the kidnapping in order to get money from his sister and that they had not tried to get money from him. This defense failed under proof which showed conclusively that their purpose was to get the ransom money from Kopelman. All doubt of this fact is dispelled by the $1000 check they secured from Kopelman and by the testimony of Victor, the lawyer who

helped raise the ransom money and conducted most of the negotiations with Resnick and Pellar. Victor testified that all of the money was raised and paid by him out of funds belonging to the victim, Kopelman. It is absurd to argue that Kopelman would enter into a scheme to get himself kidnapped in order that he might pay out his own money to ransom himself.

Since there was no charge in the indictment of any offense except kidnapping for ransom, the trial court would have committed error if it had given the jury an instruction or form of verdict defining and prescribing the penalty for any other kind of kidnapping. The defendants were either guilty of kidnapping for ransom or not guilty. *People* v. *Schultz*, 267 Ill. 147.

Complaint is also made that the court improperly refused to give instruction "B" for defendants, in which they asked the court to instruct the jury that every material element of the offense should be proved beyond a reasonable doubt. The record shows that this language was used in instruction No. 19 and was also substantially covered by language used in four other instructions given. The court therefore properly refused to give the instruction in question.

A review of the record reveals no reversible error. The identity and guilt of both Pellar and Resnick were established beyond question, largely by their own testimony. In view of the sordid nature of their crime the jury was indeed considerate in fixing their sentence for a term of twenty years when their punishment under the statute might have been fixed at life imprisonment or death.

The judgment of the criminal court of Cook county is affirmed.

*Judgment affirmed.*