THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WALKER KIMLER, Plaintiff in Error.

*Opinion filed February 16, 1927.*

1. CRIMINAL LAW—*when instructions sufficiently define forgery.* It is sufficient when the instructions, considered as a series, substantially present the law of the case fairly to the jury, and though instructions attempting to define forgery are objectionable in that they fail to contain any statement that intent to damage and defraud is a necessary element of the crime, the omission is not fatal where other instructions specifically inform the jury that to constitute the offense charged the intent alleged in the indictment must be shown.

2. SAME—*when indictment sufficiently sets out forged instrument—variance.* An indictment charging the making and forging of a check sufficiently sets out the forged instrument where it sets out a photostatic copy of the check and alleges the endorsement of the name of the payee on the back thereof; and the fact that certain initials of a bank official also appeared on the back of the check to enable it to be cashed readily does not constitute a variance, nor is the prosecution precluded from introducing evidence that said initials were forged.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. GEORGE FRED RUSH, Judge, presiding.

LOUIS PIQUETTE, (WILLIAM R. McCABE, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, and JAMES B. SEARCY, (EDWARD E. WILSON, and CLARENCE E. NELSON, of counsel,) for the People.

Mr. JUSTICE FARMER delivered the opinion of the court:

Walker Kimler (also known as Charles Walker and hereinafter referred to as the defendant) was indicted for forgery by a grand jury of Cook county. The indictment charged, in substance, that the accused on April 11, 1925,

in Cook county, Illinois, did feloniously, fraudulently and falsely utter and attempt to pass as true and genuine a certain false and forged counterfeit check and order for the payment of money, with intent thereby then and there to prejudice, damage and defraud the Foreman National Bank, a Chicago corporation, out of the sum of $3500. He was tried by a jury in the criminal court of Cook county at the February term, 1926, and a verdict was returned finding him guilty as charged and his age to be about thirty-two years. Motions for a new trial and in arrest of judgment were overruled and judgment entered on the verdict, sentencing defendant to the penitentiary. He has sued out a writ of error to review the judgment.

The evidence produced upon the trial by eight witnesses for the People was substantially as follows: About eleven o'clock in the morning of April 11, 1925, defendant was in the Foreman National Bank, in Chicago, and appeared before the window of the paying teller, Harry C. Bartling, to whom he presented for payment a voucher check purporting on its face to have been issued by the Consolidated Wire and Associated Corporations and bearing thereon the written signatures of its president and treasurer. The check was drawn upon the Continental and Commercial National Bank in amount of $3500, payable to Louis Mettger and indorsed by said payee; also on the back of the check were the initials "E. G. N.," which are the initials of Edwin G. Neise, an assistant cashier and officer of the Foreman National Bank, and which were supposedly placed there for the purpose of showing that official's approval of the check presented by defendant. Such a method of approval or procedure was the custom of the Foreman National Bank before cashing any check drawn upon another or outside bank. In the paying teller's cage at the time was Russell Carlson, an assistant to the paying teller, and immediately behind defendant in the line of persons going to the teller's window was Miss Margaret Kavanaugh.

When defendant presented the check for payment he asked for large bills—"three one thousand and one five hundred." Bartling showed the check to Carlson and then called by telephone Neise, the assistant cashier, who came to the teller's cage. However, before Neise reached the cage defendant had left the scene. He was seen in Detroit during May, 1925, by Joseph Garvey, of the William J. Burns Detective Agency, and was apprehended in September, 1925, in New York City, where he was later identified by Carlson, of the Foreman National Bank. Defendant was positively identified as the man who presented the check at the paying teller's window, by the teller, Bartling, by his assistant, Carlson, and by Miss Kavanaugh. The latter testified she was immediately behind defendant in the line going to the teller's window that morning; that four or five persons were in line ahead of defendant; that she saw him present a green-colored check to the bank teller; that she heard defendant say how he wanted the money; that she noticed what took place at the paying teller's cage and saw defendant leave. Paul Mann, the president of the Consolidated Wire and Associated Corporations, and whose name appeared on the forged check, testified the signature was not in his handwriting, nor was the name of his brother, Joe Mann, appearing on the check as treasurer, in the handwriting of Joe. He stated the check was very much like the kind used in the company's business, but he could not account for the manner in which one of the company's blank checks was obtained. Joe Mann, the treasurer of the corporation, testified the signature appearing upon the check was not in his handwriting. Neise, assistant cashier of the Foreman National Bank, testified the initials "E. G. N." on the back of the check were not placed thereon by him. Garvey, of the Burns Detective Agency, testified to having photographs made of defendant when the latter was in charge of the police in Detroit during May, 1925, at which time defendant told him his (defendant's)

name was Charles Walker. The check in question was offered in evidence as People's Exhibit 1.

Defendant testified in his own behalf and denied that he had any knowledge of the alleged forgery or any connection therewith. He stated he had never before seen the check in question; that he did not know any of the officers of the Consolidated Wire and Associated Corporations or where its office was, and denied that he was in the Foreman National Bank on the 11th of April, 1925; that he lived in Chicago at that time and was a novelty advertising salesman, and on April 11, 1925, which was the day before Easter, he had breakfast with a widow, Mrs. Jean Church, who was cashier at a restaurant, and thereafter went down-town on a shopping trip with her till three o'clock that afternoon. He admitted having been arrested twice,—in Detroit, where he first saw Garvey, and also in New York, where he first saw Carlson. He denied ever having previously seen Carlson, Bartling or Miss Kavanaugh. His testimony was corroborated by Mrs. Jean Church, who stated she had known defendant about two years, and that he was with her from nine o'clock in the morning of April 11, 1925, until after two o'clock that afternoon. She testified to having left a hat belonging to defendant at Marshall Field's store on that morning to be cleaned, and the records of that store tended to show a hat to be cleaned had been left there on that day by Mrs. M. Church.

Several errors were assigned by defendant, but those argued in his brief are, (1) that the court gave erroneous instructions to the jury; (2) there was a fatal variance between the allegations of the indictment and the proof; (3) and that it was fatal error for the prosecution to attempt to set out a written instrument *in hæc verba* and fail to show the initials "E. G. N." on the back thereof.

The two instructions complained of are designated by counsel as the fifth and sixth instructions given for the

People. They tend to define what constitutes the crime of forgery and its punishment, but neither instruction contains any statement that intent to damage and defraud is a necessary element of the crime. Standing alone these instructions are objectionable in not stating that intent to defraud must be shown. The two instructions complained of were correct as far as they went but omitted the element of intent to defraud. In two other instructions,—the first one given for the defendant and one for the People,—such intent is specifically mentioned. The first instruction given for the People states: "The court instructs the jury, as a matter of law, that, to constitute the offense charged in this case, the intent alleged in the indictment is necessary to be shown." It is sufficient when the instructions, considered as a series, substantially present the law of the case fairly to the jury. (*People* v. *Heard,* 305 Ill. 319.) We do not think the complaint made of the instructions is sufficient to constitute reversible error.

It is next contended by defendant that a fatal variance existed between the indictment and proof, because, as we understand counsel, the proof showed the check had the initials "E. G. N." on the reverse side, which initials were shown to have been forged, but that such initials were not mentioned in the indictment. The indictment charged the making and forging of a certain check, a photostatic copy of which was set out in the indictment, with an allegation of the endorsement of Louis Mettger appearing on the reverse side thereof. The check was offered in evidence and became a part of the record. The proof also showed that this check was not made by the president and treasurer of the Consolidated Wire and Associated Corporations, whose names it bore. Defendant was not charged with forging the initials "E. G. N." of the assistant cashier which appeared on the reverse side of the check. The presence of these initials merely shows defendant's cleverness in attempting to cause the paying teller of the bank to pay the

324—29

money without questioning the genuineness of the paper. There was no variance between the allegations of the indictment and the proof.

It is next contended it was fatal error for the prosecution to set out a written instrument *"in hæc verba"* and fail to show the initials "E. G. N." on the back thereof, and that such initials not having been shown, the People should not have been permitted to offer proof concerning them. We have previously stated what the almost certain purpose was in placing these initials upon the forged check, and that the assistant cashier whose initials they were testified he did not write them on the check. No objection whatever was made at the time by counsel for defendant to the introduction of this testimony by the State, and had there been we can see no objection to it. It merely shows the effort and thought put forth by defendant to successfully obtain the money upon the forged check. It is true, the rule is that every indictment for forgery or other crimes, the essence of which consists in the publication or fabrication of a written instrument, must on its face profess to set out an exact copy of the instrument, except where the instrument is in the possession of the accused, destroyed, or for some other reason not accessible to the grand jury, in which case the excuse for not setting it out must be distinctly averred. (*People* v. *Tilden,* 242 Ill. 536.) The reason for the rule is, that the defendant could demand from the face of the record the judgment of the court as to whether the instrument was a check or other instrument as to which a forgery could be committed and not be bound by the judgment of the drawer of the indictment. A court cannot know whether an indictment charges a forgery unless it knows the language of the alleged forged instrument. In the instant case the indictment set out in full the forged check by a photostatic copy and alleged the endorsement of the payee thereon. The check as set out in the indictment was complete and the evidence of the offi-

cers of the corporation showed it was not genuine. The presence of the initials on the reverse side thereof did not change the charge of forgery of the check and attempt to pass the same. In fact, the initials were no necessary part of the forged check itself but merely a means used by defendant to make his forgery appear the more real. There is no merit in this contention.

From our examination of this record we are convinced that defendant has had a fair trial and that the verdict was justified.

The judgment of the criminal court is therefore affirmed.

*Judgment affirmed.*