(No. 18272.—Judgment affirmed.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. WILLIAM BROWN, Plaintiff in Error.

*Opinion filed October 22, 1927.*

1. CRIMINAL LAW—*when confession is not incompetent because it shows another crime.* In a prosecution for murder, which the defendant is charged with having committed during an altercation, that portion of a confession which shows that the defendant killed another person besides the one whom he is charged with having killed is not incompetent as showing the commission of another separate crime, where the two homicides were committed at the same time and place and were so simultaneous that the defendant himself is unable to say positively which person he killed first.

2. SAME—*when instructions as to manslaughter are properly refused.* Voluntary drunkenness does not excuse the commission of a crime, and in a prosecution for murder, which the proof shows was brutal, willful and deliberate, instructions as to the law of manslaughter are properly refused, notwithstanding evidence that the defendant had drunk some whiskey previous to the commission of the crime, where no defense was made at the trial that the defendant did not know what he was doing or that he was unable to control the impulse to kill.

WRIT OF ERROR to the Circuit Court of Massac county; the Hon. A. E. SOMERS, Judge, presiding.

WALTER ROBERTS, and W. L. KRONE, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ROY R. HELM, State's Attorney, and MERRILL F. WEHMHOFF, for the People.

Mr. JUSTICE FARMER delivered the opinion of the court:

William Brown, plaintiff in error, (hereafter referred to as defendant,) was indicted by the grand jury of Massac county for the murder of Sadie Harris on December 17, 1926. Two experienced attorneys were appointed by the court to defend him. He pleaded not guilty, was tried

the latter part of February, found guilty of murder as charged in the indictment and sentenced to be hanged. He brings the record to this court for review.

Defendant, Mrs. Sadie Harris and Mrs. Anna Caldwell, an aged woman, lived in the same house. Mrs. Harris had a husband with whom she was not living and defendant had a wife with whom he was not living. Defendant and Mrs. Harris sustained illicit relations. She was about thirty-eight years old. Her husband had been residing in Indianapolis more than two years, and the wife of defendant lived about three and three-fourths miles from Brookport,—the village where the homicide was committed. The husband of Mrs. Harris was expected to return about Christmas time, and apparently defendant intended to return home December 17, before Mrs. Harris' husband arrived. Defendant was about forty-five years of age, was employed as a section hand on the railroad and received his pay December 17, 1926. After supper that day Mrs. Harris went to visit a neighbor. Defendant split some wood, and after he finished he took his suitcase and dinner bucket and left, apparently for the home where his wife lived. He first went to the neighbor's where Mrs. Harris was visiting. From there they went together to another neighbor's and thereafter to a store, where they made some small purchases. Then they separated. Mrs. Harris went toward her home and defendant went in the direction of his wife's home. About ten o'clock he returned to the house of Mrs. Caldwell, where he and Mrs. Harris had been living. There was a light in the house, and he walked in the front door and into Mrs. Harris' bed-room. She was sitting on the side of the bed in her night gown and had her shoes and stockings on. She and defendant were colored people. When defendant went into the room where Mrs. Harris was, he found a white man sitting in the room on a chair. Defendant did not know the white man but attacked him, and a scuffle ensued. During the struggle

326—41

the white man got away, left the house, escaped, and has never been heard from since. Defendant got hold of an ax and killed Mrs. Harris and Mrs. Caldwell. No one was present at the time beside defendant and the persons killed. The next morning defendant had blood on his clothing and hands, and was arrested and placed in jail. Some days afterwards he voluntarily confessed to the sheriff that he had killed the two women and told how the killing was done. Four or five days later, in the sheriff's office, the State's attorney asked defendant about the circumstances attending the murders. . A stenographer was present, took down the questions and answers in shorthand, transcribed them, and the next day read them over to defendant slowly, in the presence of the State's attorney, county clerk and four other witnesses. Defendant was asked repeatedly as the transcript was read if it was correct, and after making one or two minor corrections he said it was. No one made any suggestions to him, and it is not pretended that he was induced by threats or promises to make the confession. The proof shows it was made at defendant's own suggestion, voluntarily and uninfluenced by fear or hope.

In the confession defendant stated he had been sustaining illicit relations with Mrs. Harris about two years; that during that time they had had trouble and fights more than once; that a month or so before the homicide he had information that other men were calling on her; that instead of going home after leaving her on the night of the homicide he went up to the railroad crossing by the graveyard and hid his suitcase and dinner bucket under a vacant house; that he later went to a railroad trestle where for a year he had kept whiskey hidden, got a pint of it and took a few drinks; that he had drunk the better part of it by the time he got back to Mrs. Harris' house; that he could not state at just what point in the altercation he got hold of the ax; that either Mrs. Harris or Mrs. Caldwell tried

to keep him from getting it; that after he began to strike with the ax there was much confusion and he did not know just when the white man got out; that he began to use the ax rapidly. He was asked by the State's attorney which of the two women he killed first, and said he did not know but thought he killed Mrs. Caldwell first. He remembered distinctly killing Mrs. Harris. He hit her in the head with the broad side of the ax. She had before that time got hold of a coat and put it on. At the time he struck her with the ax she had hold of the door. He identified the ax with which the murders were committed. When shown the ax by the State's attorney defendant was asked if that was the ax with which he killed Mrs. Caldwell and Mrs. Harris, and he said it was. He was asked what his motive or reason for killing the women was, and he said he had none that he knew of. He was asked if it was jealousy on account of other men, and said it must have been that.

Several witnesses for the People testified to the condition and circumstances under which the confession was made. It was sworn to by defendant before the county clerk. One witness testified he had on two previous occasions talked with defendant about separating from the Harris woman and advised him to leave her; that defendant said he thought that would be a good idea—"that he might kill her." In the same connection he had told the witness about difficulties they had had about money and other things.

No testimony was offered on behalf of defendant. His counsel contend that it was prejudicial error to admit in evidence the whole of the confession. When the confession was offered in evidence counsel made a general objection, which was overruled. It is now contended that the part of the confession which included the killing of Mrs. Caldwell should not have been admitted; that it was proof of another crime distinct from the one for which defendant was being tried—the murder of Mrs. Harris. Defendant

invokes the rule that in the prosecution for a particular crime, evidence that defendant has committed another crime wholly independent of that for which he is on trial is irrelevant and inadmissible unless its admission is made to show knowledge, intent, animus, motive, or some scheme which would throw light on the case on trial. It is true, defendant was being tried under an indictment for the murder of Mrs. Harris. A separate indictment was pending against him for the murder of Mrs. Caldwell. Both murders were committed at the same place, in the same room, during the same altercation. Defendant could not be certain which of the women he first killed. Both murders were parts of the same transaction. He said someone tried to keep him from getting hold of the ax, but he got it and started using it rapidly. The objection now made to the confession was not made on the trial, but if it had been it would not have been a valid objection. Under the circumstances of the case there was no error in admitting the confession. *People* v. *Murphy,* 276 Ill. 304; *Hickam* v. *People,* 137 id. 75; *People* v. *Cione,* 293 id. 321; *People* v. *Jennings,* 252 id. 534; *People* v. *Spaulding,* 309 id. 292; Underhill on Crim. Evidence, (3d ed.) sec. 154.

It is also contended the court erred in refusing to instruct the jury, for defendant, as to the law of manslaughter. There is no evidence in the record upon which to base instructions on the subject of manslaughter. There was no element in the case upon which a verdict of manslaughter could have been predicated. The proof shows the crime was a brutal, willful and deliberate murder. *People* v. *Schultz,* 267 Ill. 147; *People* v. *Grant,* 313 id. 69; *People* v. *Tokoly,* 313 id. 177.

It is also suggested by counsel for defendant that the proof did not disclose enough mentality, deliberateness or consciousness at the time of the homicide to make it murder; and further, that the homicide might have been the result of the use of intoxicating liquor. We think there

is no merit in either of these contentions. Insanity or intoxication was not urged as a defense on the trial of the case. Obviously there could be no defense of insanity sustained, and defendant himself did not claim he was intoxicated at the time of the homicide. He told the circumstances in considerable detail; told where Mrs. Harris was at the time he struck the mortal blow; that she had on her coat and was at the door leading out of the room at the time he crushed her skull with the broad side of the double-bitted ax. She was evidently trying to escape. Defendant had drunk some whiskey during the evening, but he did not claim he was intoxicated, or that he did not know what he was doing, or that he was unable to control the impulse to murder. At any rate, voluntary drunkenness does not excuse the commission of a crime.

Complaint is made of four instructions given on behalf of the People. The same or similar instructions have been approved by this court in previous decisions, and we do not think the criticisms made of them are sufficiently meritorious to justify a discussion of the instructions in detail.

There is no reversible error in the record, and we have no doubt as to the guilt of defendant or that he had a fair and impartial trial.

The judgment of the circuit court will be affirmed, and the clerk of this court is directed to enter an order fixing the period between sunrise and sunset of Friday, the 16th day of December, 1927, as the time when the original sentence of death entered in the circuit court of Massac county shall be executed. A certified copy of that order will be furnished by the clerk to the sheriff of Massac county.

*Judgment affirmed.*