THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES ROBINSON, Defendant-Appellant.

(No. 57570; )

First District (3rd Division)—July 3, 1974.

James J. Doherty, Public Defender, of Chicago (Harold A. Cowen, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and Jonathan B. Gilbert, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Defendant, Charles Robinson, was charged with the murder of Charles Tolbert. After a jury trial, he was found guilty of that crime and was sentenced to a term of 14 to 30 years. On appeal defendant contends that the trial court improperly permitted a rebuttal witness to be called as a court's witness and to testify to a collateral matter outside the scope of proper rebuttal; that certain instructions given to the jury were erroneous; and that the prosecutor's closing argument was improper, requiring reversal. Defendant's underlying contention in all three arguments is that certain testimony of a rebuttal witness erroneously introduced an improper inference of an unrelated crime. After oral argument, defendant was given leave to file a supplemental brief adding another contention. In the supplemental brief, he argues that comments made by the trial judge during the selection of the jury were improper. He further maintains that the error resulting from the judge's comments was compounded by the failure of the court to submit a certain instruction to the jury.

The State produced three eyewitnesses to various aspects of the crime. Vera Brooks testified that on May 9, 1970, she observed three men on the sidewalk across the street from her home in the City of Chicago: the defendant, the deceased, and James Brown. The three men appeared to have been arguing. Vera Brooks further testified that she saw defendant shoot Brown. Defendant then said something, and turned and shot the deceased who was standing at arm's distance against the wall. The deceased stooped over, and defendant shot him again. Brown and defendant then ran away.

Marie Smith and her stepdaughter, Rene Smith, testified that the incident occurred on the sidewalk in front of their home. After defendant shot Brown, both witnesses heard the defendant say to the deceased: "You made me shoot my partner, now I'm going to shoot you." Defendant was the only one of the three men who displayed a gun. After Brown was shot, Marie Smith ran into her home momentarily and then returned outside. Rene Smith came outside after the first shot. They did not see any struggle.

Officer John Martin of the Chicago Police Department testified that he found the deceased lying on the ground with two bullet wounds in the neck. The deceased's wallet, along with an empty money clip and identification papers, were also found at the scene. Defendant told both the arresting officer and Rosemary Barnett, in whose apartment defendant was arrested after the occurrence, that Brown was shot by an unknown stranger as Brown and defendant stood on a corner.

Defendant testified that he shot the deceased accidentally while trying to take the deceased's gun away from him. The deceased was seeking to get even because he once lost a fight to defendant. Defendant stated that he first struck the gun held by the deceased, causing it to go off, wounding defendant's friend Brown. Defendant denied telling the deceased he was going to shoot him.

Lettie Sims testified for the defense that she heard three shots, went outside, and saw two men struggling for a gun. Officer Ronald Goscenski of the Chicago Police Department testified for the defense that he interviewed Marie Smith and Vera Brooks after the occurrence. Both witnesses told the officer that they were asleep when they heard the first shot. They then went to their front windows to watch what happened.

After the defense rested, James Brown, over objection, testified as a court's witness on rebuttal that the deceased and defendant had argued, that defendant had ordered the deceased to empty his pockets, and that a struggle had resulted in which the witness and the deceased were shot by defendant. Brown also testified that, when ordered by defendant to empty his pockets, the deceased took out his wallet and papers. Brown did not see the deceased with a gun.

Defendant's initial contention is that the trial court committed reversible error in permitting Brown to be called as a court's witness and to testify to a collateral matter outside the scope of proper rebuttal.

■■ The requisite foundation which must be laid for the calling of a witness as a court's witness consists of the giving of reasons as to why the party desiring the witness so called cannot vouch for his veracity, and a showing that the testimony of the witness will relate to direct issues and is necessary to prevent a miscarriage of justice. (*People v. Dennis* (1970), 47 Ill.2d 120, 265 N.E.2d 385, *cert. denied* (1971), 403 U.S. 907.) The calling of a witness as a court's witness is a matter within the discretion of the trial court, and unless such discretion is clearly abused, it will not be disturbed on review. *People v. Banks* (1955), 7 Ill.2d 119, 129 N.E.2d 759, *cert. denied* (1956), 351 U.S. 915.

■■■ At the time the State requested the court to call Brown as a court's witness, the prosecutor offered to show either at a factual hearing

or by oral representation that he could not vouch for Brown's veracity because of prior inconsistent statements he had made to police officers and prosecutors. The trial court stated that the prosecutor's oral representation would be sufficient, and defense counsel made no objection to this procedure. We hold, therefore, that the State laid a sufficient foundation to show that it could not vouch for Brown's veracity. It also seems evident that Brown's testimony was necessary to prevent a miscarriage of justice. Although the State offered three eyewitnesses to parts of the occurrence, Brown admittedly was present and viewed the entire incident. His testimony was essential.

■■ Defendant further argues that Brown was permitted to testify on a collateral issue which was beyond the scope of proper rebuttal, rather than on a direct issue. In making this contention, defendant refers to Brown's testimony that defendant ordered the deceased to empty his pockets and that Brown saw the deceased take his wallet and papers out of his pocket. Defendant maintains that his testimony introduced an improper inference of another crime, robbery, into the evidence. In our view, Brown's testimony on this point related to a direct issue. It was directly contradictory to defendant's testimony that he acted in self-defense. The testimony in question indicated that the deceased had emptied his pockets and that he did not have a gun in his possession. Moreover, the argument overlooks the fact that during the State's case-in-chief one of the police officers testified that he had found the deceased's wallet and papers on the sidewalk at the scene. And even if part of Brown's testimony could be considered to have been on a collateral issue, we do not believe that the testimony could be sufficiently prejudicial to warrant reversal. (See *People v. Dennis, supra.*) We conclude that the court did not err in permitting Brown to be called in rebuttal as a court's witness, and we also hold that the scope of his examination was proper.

Defendant next contends that the trial court committed reversible error in the giving of certain instructions to the jury. He argues that the instructions were prejudicial and misleading because they arose from an improper inference contained in Brown's testimony about a robbery attempt. The instructions complained of were as follows:

> "A person is not justified in the use of force if he is attempting to commit a forcible felony."

And:

> "When I use the words 'forcible felony,' I mean a felony which involves the use of threat of physical force or violence against any individual."

Instructions should fully and fairly set out the law applicable to the theories of the respective parties. (*People v. Jackson* (1969), 116 Ill.App. 2d 304, 253 N.E.2d 527.) The foregoing instructions were submitted by the State in response to defendant's self-defense instruction given to the jury in which there was language that deadly force was justifiable if a person believed that such force was necessary to prevent imminent death or great bodily harm to himself. We believe, therefore, that the instructions given were proper and necessary to a fair presentation of the issues. They were based on evidence properly introduced at trial. We again observe that it was one of the police officers who first testified that he found the deceased's empty wallet and identification papers alongside his body. We also note that at the request of defense counsel the words "forcible felony" were substituted for the word "robbery" in the instructions given. Moreover, instructions will be considered as a series and a reviewing court will not reverse merely because one or more instructions are superfluous or misleading. (*People v. Hyde* (1971), 1 Ill.App.3d 831, 275 N.E.2d 239; *People v. Juve* (1969), 106 Ill.App.2d 421, 245 N.E.2d 293.) Even if the references to "forcible felony" were erroneous, our examination of the entire set of instructions reveals that they were fair to defendant. See *People v. Marsh* (1949), 403 Ill. 81, 85 N.E.2d 715, *cert. denied* (1949), 338 U.S. 837.

■■ Defendant's next contention is that the prosecutor's closing argument was improper, requiring reversal. Expanding his earlier argument, defendant first complains that the prosecutor, relying on Brown's testimony, improperly commented that a possible robbery attempt caused the crime. In view of our holding that Brown's testimony was proper, we find that the comment was warranted by the evidence introduced, and, in any event, we do not consider the remark to have constituted a material factor in the conviction requiring reversal. See *People v. Weaver* (1972), 8 Ill.App.3d 299, 290 N.E.2d 691.

■■ Defendant also complains generally of the prosecutor's entire closing argument and specifically that the prosecutor improperly referred to him as "Blasting Charley" and as "Smiling Charley." The record, however, reveals that defendant did not object to his characterization as "blasting," thereby waiving any possible error. The trial judge sustained defendant's objection to the reference to him as "smiling," and thus cured any prejudice. We have carefully reviewed the record, and the balance of the prosecutor's closing argument, taken as a whole, appears within the fair comment allowed the State.

Defendant's final contention, advanced for the first time in a supplemental brief filed by leave of court after oral argument, is that certain comments made by the trial judge during the selection of the jury were

erroneous, and that the error was compounded by the failure of the court *sua sponte* to submit a certain instruction to the jury.

■■ During defense counsel's argument on his oral motion for a new trial, he raised for the first time in the trial court the issue that during the voir dire the trial judge had attempted to clarify the term reasonable doubt for the jury by use of an example, and that the example given turned out to be factually similar to the present case, thereby prejudicing defendant. By agreement of the parties, no court reporter was present during the voir dire proceedings, and the record reveals that the judge and both attorneys were hazy as to what the judge actually had said. All parties agree, however, that the example given referred to Senator Robert Kennedy's assassination. Defense counsel recalled that the example was to the effect that if the bullet in a deceased's body matched a gun found on a defendant, and a witness testified that a defendant fired the shot, this would raise no reasonable doubt. The judge's recollection was that he said something to the effect that should the State fail to tie a defendant to the gun or to place a defendant at the scene of the crime, reasonable doubt of defendant's guilt would be created. The trial judge, in denying the motion for a new trial, observed that defendant had made no objection to the comments and that defendant had amply presented his self-defense theory to the jury. Defendant urges that, even accepting the judge's recollection, the comment was improper because it omitted any reference to justification, the heart of defendant's defense. (Supreme Court Rule 234 provides that jurors shall not be examined at voir dire on matters of law and instructions, but defendant apparently concedes that no violation of that Rule occurred.)

■■ Our supreme court has stated that reasonable doubt is a term which needs no elaboration and which is futile to attempt to define. Consequently, the court has directed that attempts to define the term be discontinued. (*People v. Malmenato* (1958), 14 Ill.2d 52, 150 N.E.2d 806, *cert. denied* (1958), 358 U.S. 899.) Courts should also refrain from attempting clarification of the term by use of examples. Nevertheless, we do not believe that defendant was prejudiced by the court's comments at voir dire. It is difficult to discern how the example relating to Senator Kennedy's assassination, given by the trial judge to prospective jurors, could be considered by them to be factually close to the evidence subsequently presented at trial, or how it could have predisposed the jury to find defendant guilty. Defendant presented his self-defense testimony and argument in detail at trial. It is significant also that defendant made no objection to the court's comment, and did not raise the issue until presentation of the post-trial motion. Indeed, even in this court, defendant concedes that the effect of the error in the court's remark at voir

dire was "clearly tentative" and, standing alone, might be held harmless.

Defendant contends, however that the trial court's error in commenting about the term reasonable doubt was compounded by the failure of the court *sua sponte* to submit a certain instruction to the jury.

At the conclusion of the evidence the State submitted IPI—Criminal Instruction Nos. 7.01 and 7.02 defining the crime of murder. As we earlier noted, defendant submitted IPI—Criminal No. 24.06, defining self-defense. The court gave both sets of instructions without any objections having been made. IPI provides, however, that when the issue of self-defense is raised, IPI—25.05 superimposed on IPI—7.02 should be given, thus adding the words: "That the defendant was not justified in using the force which he used." Defendant maintains that the jury was not properly informed that the State must prove beyond a reasonable doubt that defendant's use of force was not justified.

Ordinarily, failure to object to proposed instructions operates as a waiver of any objections. (*People v. Mallett* (1970), 45 Ill.2d 388, 259 N.E.2d 241.) However, Supreme Court Rule 451 provides that substantial defects are not waived by a failure to make timely objections if the interests of justice so require. Also see *People v. Davis* (1966), 74 Ill. App.2d 450, 221 N.E.2d 63.

■■ While the perfect instruction, IPI 25.05 superimposed on IPI 7.02, was not given, we do not find in the instructions given any substantial defect which in the interests of justice would prevent the operation of waiver under Rule 451. The State, without objection, submitted IPI 7.02 defining murder, and defendant himself tendered IPI 24.06 dealing with self-defense and justification. The latter instruction reads as follows:

> "A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend himself against the imminent use of unlawful force.
>
> However, a person is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself."

In addition, the jury was instructed on the presumption of innocence and burden of proof generally. In light of all the instructions given, defendant was not prejudiced by the fact that an instruction superimposing 25.05 on 7.02 was not given *sua sponte* by the trial judge.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

DEMPSEY and MEJDA, JJ., concur.